1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARIO THOMAS AZAMA,

11              Petitioner,              No. 2:11-cv-0684 WBS JFM (HC)

12        vs.

13   M. MARTEL,

14              Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  In 2009, petitioner was convicted of second degree

18   robbery, carjacking, and vehicle theft, all with personal use of a handgun.[1]  Petitioner was

19   sentenced to twenty-three years and eight months in state prison.  Petitioner claims there was

20   insufficient evidence that he used a handgun to support that true finding and the enhancements to

21   his sentence that were therefore imposed.  Respondent contends that the claim is procedurally

22   barred and, in the alternative, that the state court's rejection of the claim was objectively

23   reasonable.

24   _____

25        [1] Petitioner was also convicted of receiving stolen property; that conviction was reversed
     on appeal.  See People v. Azama, No. C061156 (Apr 1, 2010), slip op. at 2, a copy of which was
26   lodged in this record on May 9, 2011 as Lodged Document No. 5.

                                         1

FACTS[2]

### *The Gallegos robbery*

On August 12, 2007, at approximately 11:00 p.m., Miguel Gallegos pulled into an Arco gas station on 16th Street and W Street in Sacramento with his wife Lydia and their two-year-old son. While Gallegos sat in the driver's seat, Lydia began pumping gas and sat next to their son in the driver's side back seat.

As they waited for the gas to finish pumping, [petitioner] approached the vehicle, lifted his shirt, and pulled out a black revolver. [Petitioner] walked over to the driver's side window and Gallegos, who was familiar with guns, heard what "sounded like it was somebody pulling the hammer back." As [petitioner] pointed the gun at the driver's side of the vehicle, the gun struck the door panel, making a noise that sounded like "metal hitting metal." Gallegos looked down and saw that the gun was "very clearly a revolver." He was "100 percent sure that [it] was a gun" and believed that it was a ".45-caliber revolver." [Petitioner] then said, "[D]id you hear what I just cocked back, my nigga?"

When Gallegos told [petitioner] that he did not have a wallet, just the ATM card he was holding, [petitioner] reached across the vehicle and grabbed Lydia's purse. Believing that her husband was going to die, Lydia began crying. [Petitioner] responded, "[W]hat, bitch, I will fucking kill you." Before running away, [petitioner] told Gallegos to put his ATM card in Lydia's purse, reached into the car and turned off the ignition, grabbed Gallegos's keys, and slammed the keys into the purse.

### *The Ryan robbery and carjacking*

Later that night, at 3:00 a.m., Richard Ryan pulled into the same Arco gas station. As he finished pumping gas, Ryan saw [petitioner] standing in front of him point a black gun.

[Petitioner] directed Ryan to empty his pockets and surrender his keys. Believing that the gun was real because [petitioner] "approached [him] with a gun [and] said things to [him] and acted in a manner to make [him] think it was a real gun," Ryan complied. He gave [petitioner] his keys, driver's license, credit cards, and money. [Petitioner] then told Ryan to run away and drove off in Ryan's 1994 Nissan Altima.

---

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal, a copy of which was lodged in the record on May 9, 2011 as Lodged Document 5.

1      ***Defense***

2      [Petitioner] testified on his own behalf.  While he admitted
    committing both crimes, he claimed the weapon he used on each
3      occasion was actually a "cigarette lighter" that "kind of looks like a
    gun."  According to [petitioner], the lighter was 12 to 13 inches
4      long, dark gray, and made of metal.  To operate the lighter, "you
    just cock the thing back [referring to the hammer] and a lighter
5      comes out of the front."  [Petitioner' was not sure what happened
    to the lighter, but thought he may have left it in a drug house.

6

7  People v. Azama, slip op. at 2-4.

8                             ANALYSIS

9  I.  Standards for a Writ of Habeas Corpus

10        Federal habeas corpus relief is not available for any claim decided on the merits in

11  state court proceedings unless the state court's adjudication of the claim:

12      (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as
13      determined by the Supreme Court of the United States; or

14      (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the
15      State court proceeding.

16  28 U.S.C. § 2254(d).

17        Under section 2254(d)(1), a state court decision is "contrary to" clearly

18  established United States Supreme Court precedents if it applies a rule that contradicts the

19  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

20  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

21  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

22  (2000)).

23        Under the  "unreasonable application" clause of section 2254(d)(1), a federal

24  habeas court may grant the writ if the state court identifies the correct governing legal principle

25  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

26  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

1  simply because that court concludes in its independent judgment that the relevant state-court

2  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

3  application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

4  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

5  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

6  omitted).

7          The court looks to the last reasoned state court decision as the basis for the state

8  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

9  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

10  habeas court independently reviews the record to determine whether habeas corpus relief is

11  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

12  II.  Petitioner's Claim

13          Petitioner claims there was insufficient evidence to support the finding that he

14  used a handgun in the commitment of the offenses.  The last reasoned state court decision on this

15  claim is the decision of the California Court of Appeal for the Third Appellate District on

16  petitioner's direct appeal, which rejected the claim as follows:

17          [Petitioner] claims that there is insufficient evidence to support
           the jury's findings that he used a firearm in committing the
18         substantive offenses.  The standard of appellate review is well
           settled:  We must "review the whole record in the light most
19         favorable to the judgment below . . . – that is, evidence which is
           reasonable, credible, and of sold value – such that a reasonable
20         trier of fact could find the defendant guilty beyond a reasonable
           doubt." (People v. Johnson (1980) 26 Cal.3d 557, 578.)  We do
21         not reweigh conflicting evidence or evaluate the credibility of
           witnesses.  "'[I]t is the exclusive province of the trial judge or jury
22         to determine the credibility of a witness and the truth or falsity of
           the facts. . . ." (People v. Ochoa (1993) 6 Cal.4th 1199, 1206.)
23         Simply put, "[a]n appellate court must accept logical inferences
           that the jury might have drawn from the evidence even if the court
24         would have concluded otherwise." (People v. Combs (2004) 34
           Cal.4th 821, 849, citing People v. Rodriquez (1999) 20 Cal.4th 1,
25         11.)

26  /////

                                    4

1

        In this case, substantial evidence supports the jury's findings
2   that [petitioner] used a genuine firearm in committing the
    substantive offenses.  In both robberies, [petitioner] displayed an
3   object that several witnesses described as a gun.  Miguel Gallegos
    testified that he was "100 percent sure" the object in [petitioner]'s
4   hand was a real firearm.  Gallegos said it was "very clearly a
    revolver" and appeared to be a .45-caliber weapon.  It also made a
5   "metal hitting metal" sound when it struck against the vehicle's
    door panel.  Gallegos's wife also believed that [petitioner]
    displayed a gun, estimating that it was 11 or 12 inches long.

6

        [Petitioner]'s words and actions provided additional
7   circumstantial evidence to support the witnesses' direct testimony.
    During the robbery, [petitioner] pulled the hammer of the gun back
8   and asked Gallegos, "[D]id you hear what I just cocked back, my
    nigga?"  [Petitioner] also threatened to kill his wife when she
9   began crying.

10       There was also sufficient evidence that [petitioner] used a gun
    to rob Ryan.  The Ryan robbery occurred only a short time after the
11  Gallegos robbery at the same location.  Ryan testified that "the
    whole gun was black" and that he could see the entire barrel.
12  [Petitioner]'s former girlfriend testified that he possessed a
    revolved in July 2007.

13

        [Petitioner], however, contends that his "testimony did set up a
14  reasonable inference which the prosecution failed adequately to
    disprove."  Essentially, he asserts that since both his testimony and
15  that of the prosecution witnesses gave rise to equally reasonable
    inferences, we must draw the inference most favorable to the
16  defense.

17       [Petitioner] fundamentally misunderstands the scope of review.
    Although the jury was entitled to reach a different verdict had it
18  believed [petitioner]'s testimony, we have no power to disturb the
    jury's resolution of conflicting testimony.

19

20      . . . .

        In this case, one witness testified he was "100 percent" certain
21  that [petitioner] displayed a revolver and other witnesses testified
    that the object displayed attributes consistent with it being a real
22  gun.  This testimony, coupled with [petitioner]'s words and
    conduct during the robberies, provided abundant evidence to
23  support the jury's finding that [petitioner] used a gun rather than a
    cigarette lighter to rob his victims.

24

25  People v. Azama, slip op. at 4-7.

26  /////

                                5

1    When a challenge is brought alleging insufficient evidence, federal habeas corpus

2    relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

3    more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond

4    a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court

5    must review the entire record when the sufficiency of the evidence is challenged on habeas.

6    Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d

7    722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve

8    conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

9    facts to ultimate facts."  Jackson, 443 U.S. 307, 319.  "The question is not whether we are

10   personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the

11   conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

12   Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the

13   substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324

14   n.16.

15   The state court's conclusion that there was sufficient evidence to support the

16   finding that petitioner personally used a handgun while committing the other offenses is

17   congruent with the foregoing standards of United States Supreme Court precedent and fully

18   supported by the factual record.  A fortiori, the state court's decision was neither contrary to nor

19   an unreasonable application of clearly established United States Supreme Court jurisprudence,

20   nor was it based on an unreasonable determination of the facts.  For that reason, petitioner is not

21   entitled to federal habeas corpus relief.[3]

22

23   [3] Respondent also contends that the claim is procedurally barred because, on habeas
     corpus, the California Supreme Court rejected the claim with, inter alia, citation to In re Lindley,
     29 Cal.2d 709 (1947), a case which stands for the proposition that insufficiency of evidence

24   claims must be raised on direct appeal and not in habeas corpus actions.  Respondent is correct
     that a citation to In re Lindley can raise a procedural bar sufficient to prevent federal court review

25   of the merits of a claim.  See Carter v. Giurbino, 385 F.3d 1194, 1198 (9th Cir. 2004).  Here,
     however, the state supreme court also denied the petition with a citation to In re Waltreus, 62

26   Cal. 2d 218, 225 (1965).  See Lodged Document 7.  "Waltreus holds that issues actually raised

1    Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United

2 States District Courts, "[t]he district court must issue or a deny a certificate of appealability when

3 it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of

4 appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

5 showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either

6 issue a certificate of appealability indicating which issues satisfy the required showing or must

7 state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons

8 set forth in these findings and recommendations, petitioner has not made a substantial showing of

9 the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

10    For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

11    1. Petitioner's application for a writ of habeas corpus be denied; and

12    2. The district court decline to issue a certificate of appealability.

13    These findings and recommendations are submitted to the United States District

14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen

15 days after being served with these findings and recommendations, any party may file written

16 objections with the court and serve a copy on all parties. Such a document should be captioned

17 "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

18 objections shall be filed and served within fourteen days after service of the objections. The

19 /////

20 ──────────────

21 and rejected on appeal cannot be raised anew in a state petition for writ of habeas corpus. Waltreus, 42 Cal.Rptr. 9, 397 P.2d at 1005. A Waltreus denial is neither a ruling of procedural default nor a ruling on the merits. Waltreus merely bars relitigation in state habeas proceedings of

22 claims already litigated on direct appeal." Carter, at 1198. In Carter, the United States Court of Appeals for the Ninth Circuit stated that "[i]f the claim barred from relitigation by Waltreus has

23 already been decided by the California Supreme Court, that claim is properly exhausted for federal habeas corpus review. Thus, a citation to Waltreus does not prevent federal habeas

24 review." Id. Here, petitioner did not raise his sufficiency of evidence claim in the California Supreme Court on direct review. However, given the California Supreme Court's citation to

25 both Waltreus and Lindley, the application of Carter to this case is not straightforward. Where, as here, the claim plainly lacks merit the court may pass on complex procedural issues and deny

26 the claim on the merits. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

1   parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: March 12, 2012.

4

5

6                        UNITED STATES MAGISTRATE JUDGE

7

8   12
  azam0684.157

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26